IN THE SUPREME COURT OF TENNESSEE

AT JACKSON

FOR PUBLICATION

**Filed: June 3, 1996**

IN RE: IRA H. MURPHY,    )
                                     )
           Appellee,    )    SHELBY CHANCERY
                                     )
                                     )
Vs.                       )    HON. JOHN HILL CHISOLM,
                                     )        CHANCELLOR
                                     )
BOARD OF PROFESSIONAL    )
RESPONSIBILITY,          )    No. 02-S-01-9503-CH-00031
                                     )
           Appellant.    )

FILED

June 3, 1996

Cecil Crowson, Jr.
Appellate Court Clerk

**For Appellant:**

Laura L. Chastain
Deputy Chief Disciplinary Counsel
Nashville, Tennessee

**For Appellee:**

A. C. Wharton, Jr.
Memphis, Tennessee

# OPINION

TRIAL COURT REVERSED;
HEARING PANEL AFFIRMED.
                                             ANDERSON, C.J.

The issue raised by this appeal is whether the petitioner, a disbarred attorney, has satisfied the requirements for reinstatement of his license to practice law contained in Rule 9, § 19.3, Rules of the Supreme Court, by clear and convincing proof.   A Hearing Panel of the Board of Professional Responsibility concluded that the petitioner had failed to carry the burden of proof for reinstatement.  The Chancery Court, however, reviewed the Hearing Panel decision and held the petitioner was entitled to "conditional reinstatement" of his license to practice law.

After carefully reviewing the record, we conclude that the evidence preponderates against the Chancellor's judgment granting conditional reinstatement.  Accordingly, we reverse the decision of the Chancellor and affirm the Hearing Panel's decision denying reinstatement.[1]

## B A C K G R O U N D

On July 16, 1986, Ira H. Murphy was convicted in federal court on eleven counts of mail fraud, one count of obstruction of justice, and one count of perjury.  Murphy's convictions for mail fraud arose out of his attempts to obtain and renew a permit to operate a bingo parlor in Shelby County.  Over the course of three years, Murphy submitted documents to the Tennessee Secretary of State's office which contained false and fraudulent representations with respect to the existence of the H.D. Whalum Lodge #373 (the purported operator of the bingo game); the tax exempt status of the Lodge; the location of the bingo games; and the membership of the Lodge.  In addition to the false and

---

[1] Because we have concluded that reinstatement is not warranted by the proof, it is not necessary for us to consider whether Murphy should have been required to take the bar examination as a condition to reinstatement.

fraudulent representations, Murphy forged the name of Charles Brooks on documents he submitted to the Secretary of State and wrote checks to himself on the bingo game bank account which totaled more than $9,000.

Murphy's conviction for obstruction of justice was based upon his attempt to influence the grand jury testimony of Charles Brooks regarding the bingo operation. Murphy's conviction for perjury was based upon his false grand jury testimony concerning the bingo operations and his involvement in the operations.

The criminal activities for which Murphy was convicted occurred over a two and one-half to three year period and began approximately two months after Murphy had been elected a judge of the General Sessions Court in Shelby County.

Murphy was thereafter sentenced to five years imprisonment on each of the thirteen convictions, with the sentences to run concurrently; he was also fined $5,000. He began serving his sentences in October 1986.

In December of 1986, the Tennessee Court of the Judiciary entered an order recommending that Murphy be removed from office. Murphy appealed and this Court affirmed the Court of Judiciary's recommendation of removal and remanded to the General Assembly for its consideration. See In Re Murphy, 726 S.W.2d 501 (Tenn. 1987). In a special joint convention, the General Assembly voted to remove Murphy from office.

The Federal Sixth Circuit Court of Appeals later overturned the mail fraud convictions, but affirmed the convictions for obstruction of justice and perjury. Ultimately, Murphy served a total of twenty months, approximately fourteen months in federal prison and six months in a halfway house, before being released on parole for the remainder of his sentence.

Based on Murphy's convictions, this Court entered an Order summarily suspending his law license on July 24, 1986. The matter was referred to the Board of Professional Responsibility for the initiation of a formal disciplinary proceeding.

Murphy entered a conditional guilty plea on the "petition to determine extent of final discipline" filed by the Disciplinary Counsel of the Board of Professional Responsibility. In an Order of Enforcement, this Court suspended Murphy from the practice of law for a period of five years beginning July 24, 1986, the date of the original summary suspension of Murphy's license to practice law.

Shortly after the five-year suspension period ended, Murphy filed a petition with the Board of Professional Responsibility seeking to have his license to practice law reinstated. The Disciplinary Counsel filed a response opposing reinstatement.

The cause was heard by a Hearing Panel of the Board of Professional Responsibility. The parties stipulated that Murphy had met all continuing legal education requirements for reinstatement.

-4-

Murphy's proof consisted of the testimony of a number of witnesses, both attorneys and laypersons. Each testifying witness had known Murphy for more than fifteen years, and expressed a high opinion of Murphy's competence and morality. In addition, each testified that Murphy accepts full responsibility for his prior misconduct, that he is remorseful for it, and that he has "paid the price" for his misconduct and now deserves to have his law license reinstated. None of the witnesses related any specific facts or interactions with Murphy since his conviction that formed the basis of their opinions. Only one defense witness, former Shelby County Criminal Court Judge Otis Higgs, expressed concern that reinstatement would negatively impact the standing of the bar and the administration of justice. Judge Higgs recommended a conditional, gradual reinstatement, with monitoring and reporting conditions.

Murphy testified on his own behalf that he has learned from his experiences and now seeks reinstatement so that he can make a valuable contribution to the community. He said incarceration has made a deep impression upon him, and he believes his reinstatement would signify to the public that a person properly punished can be given a second chance.

Disciplinary Counsel's proof consisted of documentary evidence to establish that in 1973, Murphy was convicted in federal court for failure to file income tax returns for two years. He received a one-year sentence that was served on probation. In June 1983, Murphy tendered a conditional guilty plea to a violation of DR 6-101(a)(3)[2] and received a public censure for neglecting legal matters entrusted to him regarding payment of an outstanding debt to a doctor out of a client's settlement proceeds.

---

[2] Supreme Court Rule 8, DR 6-101(A)(3) provides that "A lawyer shall not neglect a legal matter entrusted to the lawyer."

Disciplinary counsel's proof also consisted of testimony from a prior chair of the Professionalism Committee of the Memphis Bar Association who stated that the committee had reviewed Murphy's application for reinstatement, as well as the facts giving rise to his suspension, and had voted, ten to five, to oppose his reinstatement. Those committee members who did not oppose Murphy's reinstatement believed they had insufficient information as to his activities since being released from jail upon which to base opposition. The President of the Memphis Bar Association also testified that the Executive Committee had recommended opposition to Murphy's reinstatement, but testified that he personally was of the opinion that the Bar should not go on record as opposing Murphy's reinstatement, but should recommend that his reinstatement be conditioned upon an additional continuing legal education requirement, with a particular emphasis on ethics. Finally, retired Supreme Court Justice William D. Fones testified that, in his opinion, Murphy's reinstatement would have a detrimental impact on the integrity and standing of the bar, the administration of justice in Tennessee, and the public interest, and, in addition, would damage the public perception of the legal system.

Based on that proof, a majority of the Hearing Panel concluded that Murphy had failed to carry his burden of proof on the criteria for reinstatement. In so holding, the majority stated, in pertinent part, as follows:

> The Panel majority cannot state that Petitioner has met by clear and convincing evidence [the requirement] that the reinstatement of Petitioner, a former Judge who committed a series of felonies over a period of three years, then induced a witness to lie to the Federal Grand Jury, who criticized the fairness of his jury trial and proceedings before the Court of the Judiciary, and even subsequent to conviction maintained his innocence before the Tennessee State Legislature and further sought salary payments subsequent to removal from office and during incarceration, would

not be detrimental to the integrity and standing of the Bar, or the administration of justice, or subversive to the public interest.

One member of the Hearing Panel dissented, stating that "some conditional reinstatement is warranted, and it is error to completely deny readmission."

On August 20, 1992, Murphy filed a petition for writ of certiorari and judicial review in the Chancery Court of Shelby County. Murphy relied upon the record before the Hearing Panel and presented as witnesses several additional attorneys and laypersons who testified they had known Murphy for many years, considered him competent, and morally deserving of reinstatement, and did not believe that his reinstatement would negatively impact the standing of the bar, the public interest, the administration of justice, or the public's perception of the legal profession. Former Shelby County Criminal Court Judge Otis Higgs again testified for the defense that, in his opinion, Murphy should be granted a gradual, conditional reinstatement. Murphy himself again testified that he was a fit and proper person to have his license reinstated, and that if reinstated, he would practice in an honorable and professional manner.

Following the hearing, the Chancellor found that Murphy was entitled to a "conditional reinstatement" of his license to practice law. The conditions imposed by the Chancellor consisted of additional continuing legal education, including ethics, volunteer work with a legal services organization, and supervised law practice for one year. Upon satisfactory completion, Murphy would be allowed to resume an "unrestricted and unconditioned" practice of law.

The Board appealed directly to this Court pursuant to Rule 9, § 1.3, Rules of the Supreme Court.

## REINSTATEMENT

With regard to reinstatement, the Rules of the Supreme Court provide, in pertinent part, as follows:

> The hearing committee shall schedule a hearing at which the petitioner shall have the burden of demonstrating by clear and convincing evidence that the attorney has the moral qualifications, competency and learning in law required for admission to practice law in this State **and** that the resumption of the practice of law within the State will not be detrimental to the integrity and standing of the bar or the administration of justice, or subversive to the public interest.

Supreme Court Rule 9, § 19.3 (emphasis added). Although the Board asserts that Murphy has failed to demonstrate by clear and convincing evidence that he has either the moral qualifications, or the competency and learning in law required for admission to practice law in this State, we view the determinative issue to be whether his reinstatement would be detrimental to the integrity and standing of the bar or the administration of justice, or subversive to the public interest. Our review of the record, including the transcript of the evidence before the Hearing Panel, is *de novo* with a presumption of correctness unless the preponderance of the evidence is contrary to the action of the Chancery Court. Henry v. Board of Professional Responsibility, 749 S.W.2d 466, 467 (Tenn. 1988); Rule 9, § 1.3, Rules of the Supreme Court.

We have thoroughly and carefully examined the record of both the Hearing Panel and the Chancery Court and summarize our observations as follows:

Murphy was convicted in federal court of perjury and obstruction of justice. Not only did Murphy lie to the federal grand jury, he attempted to persuade another person to lie to the grand jury. Such conduct strikes at the very heart and soul of the judicial system and without question would have a detrimental impact on the integrity and standing of the bar, the administration of justice and the public interest. In this case, that detrimental impact is exacerbated because the illegal conduct and convictions occurred while Murphy was occupying a position of public trust as a sitting judge of the general sessions court of Shelby County. Because Murphy was a sitting judge, the publicity and notoriety attendant to his conduct and convictions was much greater than it otherwise would have been had he been simply a practicing attorney.

A number of individuals testified in favor of reinstating Murphy's license to practice law. When asked to explain the reasons for their support of his reinstatement, these witnesses said that Murphy has "paid the price," and that he has rehabilitated himself and is remorseful for his actions. Their testimony, however, is totally conclusory and completely devoid of specific facts and circumstances which have arisen since Murphy's convictions that demonstrate either rehabilitation or remorse. Moreover, while this testimony may be relevant to Murphy's moral character, it bears little relevance on the question of whether Murphy's reinstatement would be detrimental to the integrity and standing of the bar or the administration of justice or subversive to the public interest. There is no specific evidence in the record as to the efforts Murphy has made to reform and make amends, and in the absence of such proof, we conclude that he has failed to prove the criteria for reinstatement by clear and convincing proof.

The license to practice law is not a right but a privilege in Tennessee. See Rule 9, § 3.1, Rules of the Tennessee Supreme Court. A person suspended from the practice of law is not entitled to have that privilege restored simply because that person has served the sentence imposed for a violation of the criminal laws. Reinstatement of the license to practice law is warranted only if certain criteria, contained within § 19.3 of Supreme Court Rule 9, are satisfied by clear and convincing proof. In this case, the evidence preponderates against the Chancellor's finding for conditional reinstatement. Reinstatement of Murphy's license to practice law would be detrimental to the integrity and standing of the bar or the administration of justice or the public interest.

## CONCLUSION

Accordingly, the judgment of the Chancellor granting conditional reinstatement is reversed, and the judgment of the Hearing Panel of the Board of Professional Responsibility, denying reinstatement is affirmed. As a result of our conclusion, it is unnecessary to address the other issues raised by the Board's appeal. Costs of this appeal are taxed to Ira H. Murphy, for which execution may issue if necessary.

_____
RILEY ANDERSON, CHIEF JUSTICE


**CONCUR:**

Drowota, Reid, Birch and White, JJ.